Pinkie Louise DOUGLAS, et al., Appellants,

v.

RELIANCE INSURANCE COMPANIES, Appellee.

No. C14–84–377CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 31, 1985.

Rehearing Denied March 7, 1985.

John D. Wittenmyer, Conway & Wittenmyer, Houston, for appellants.

John W. Belk, Hirsch, Glover, Robinson & Sheiness, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

MURPHY, Justice.

This is an appeal from a take-nothing judgment wherein the trial court refused to mature a workers' compensation award of weekly death benefit payments and grant Appellant a lump sum payment pursuant to TEX.REV.CIV.STAT.ANN. art. 8307, § 5a (Vernon 1967). We affirm.

On or about February 19, 1975, Melvin Douglas suffered accidental injuries in the course of his employment which resulted in his death. On March 24, 1976, the Industrial Accident Board (IAB) awarded workers' compensation benefits to Pinkie Louise Douglas, the surviving widow, and to his five minor children. The Board ordered Appellee, Reliance Insurance Company, to pay $35.00 per week to Pinkie Louise Douglas, less attonrey's fees of $8.75 per week for the first 200 weeks. After 200 weeks, Appellee was to pay the full $35 per week to Mrs. Douglas, until her death or remarriage. Additionally, Appellee was ordered to pay $29.17 per week to Pinkie Louise Douglas, as guardian and next friend of her minor children, less attorney's fees of $7.29 for the first 200 weeks. After 200 weeks, Appellee was to pay the full $29.17 per week to Mrs. Douglas for the minor children, until they reached 18 years of age (or 25 years, if enrolled in an accredited school).

Pursuant to the Board's order, Appellee began making weekly payments to Appellant in August 1976. In March 1982, Appellants filed suit to mature the award, alleging that on a number of occasions Appellee had failed to make timely payments of the weekly benefits. Appellants sought a lump sum payment, a twelve percent penalty, and reasonable attorney's fees as authorized by Article 8307, § 5a, which reads, in part:

> Where the board has made an award against an association requiring the payment to an injured employee or his beneficiaries of any weekly or monthly payments, under the terms of this law, and such association should thereafter fail or refuse, without justifiable cause, to continue to make said payments promptly as they mature, then the said injured employee or his beneficiaries, in case of his death, shall have the right to mature the entire claim and to institute suit thereon to collect the full amount thereof, together with twelve per cent penalties and attorney's fees, as herein provided for.

At the conclusion of a non-jury trial, the court rendered a take-nothing judgment against Appellants from which they have perfected this appeal.

In points of error one, two, eleven, twelve, thirteen, fourteen, and fifteen, Appellants contend that the trial court erred in finding that Appellee did not fail or refuse to promptly issue weekly drafts for payments to Appellant, and, in concluding that the award of the Industrial Accident Board should not be matured. It is their contention that the evidence established the contrary as a matter of law, or, alternatively, that such findings were against the great weight and preponderance of the evidence. However, Appellants have limited their argument to specific instances that show, as a matter of law, that the Defendant breached its duty under Article 8307,

§ 5a. Thus, we will also limit our discussion accordingly.

In support of their argument that the evidence shows Appellee failed to comply with the IAB award as a matter of law, Appellants cite the following instances in their brief:

(1) Upon completion of the first two hundred weeks, the weekly payments to Appellants were to increase under the terms of the award. Appellants contend that the undisputed evidence established that Appellee failed to increase the weekly checks until week 204 and never made up the deficiency to Appellants.

(2) Appellee mailed a weekly check for the week of February 11, 1982, (week 367) to the wrong party. The following week of February 18, 1982, (week 368) Appellee cancelled the misdirected draft and reissued a replacement. However, no original draft was issued for week number 368.

(3) Mrs. Douglas testified she received a draft in the sum of $29.17 from Appellee in March, 1982 which had an issue date of October 21, 1981.

(4) The evidence reflects that the weekly drafts were often issued three to four days later than the last date for the period due.

■ In response to Appellants' argument, we must first point out that in May 1978, Appellee made a four week advance payment on all of its death claims, including that of Appellants. Appellee explained that such advances were made in order to insure that payments would be timely and in order to be in compliance with Art. 8307, § 5a, even if it failed to make a weekly payment. When questioned by the court during oral argument, Appellants conceded that, taking into consideration the four week "advance payment" made by Appellee, *no* weekly check was late as a matter of law. Therefore, notwithstanding the allegations enumerated above, Appellants'

admission in open court precludes any further discussion of these matters. We overrule points of error one, two, and eleven through fifteen.

■ As a consequence of our ruling on the above points, it is incumbent upon this Court to address Appellants' points of error nine and ten wherein they argue that Appellee had no authority to make any advance, or "lump sum," payment. Appellants first contend that the trial court erred in finding that Appellee made an advance payment of four weeks commencing with the *200th* week, continuing to make weekly payments one month in advance, because the evidence established the contrary as a matter of law, or, alternatively, that such finding is against the great weight and preponderance of the evidence. Appellant correctly states that the court erred in finding that Appellee made its four week advance commencing with the 200th weekly payment. In fact, the advance was made after week 168, not week 200. Nevertheless, we find that if it was error, it was harmless. TEX.R.CIV.P. 434.

■ Additionally, Appellants cite Articles 8306, § 15 and 8307, § 12 to support their contention that Appellee's advance payment was improper, stating that "any advances or 'lumping' of payments must first be approved through the Industrial Accident Board." Appellant is correct in stating that *lump sum* payments must be approved by the IAB. In fact, Article 8306, § 8(d), which Appellants have failed to discuss, states that "benefits payable to a widow, widower, or children under this section shall not be paid in a lump sum except in events of remarriage or in case of bona fide disputes as to the liability of the association for the death." [1] While we fully recognize the lump sum provisions set out in the Act, we do not believe any of these provisions should be made applicable to a four week advance payment such as that made by Appellee. While it is true

---

1. The limitations placed on lump sum awards by the death benefit statute do not apply to an enforcement proceeding under Art. 8307, § 5a.

*Twin City Fire Insurance Co. v. Cortez,* 576 S.W.2d 786 (Tex.1978).

that Appellee made the payment in order to avoid the stringent penalties of Article 8307, § 5a, we are not persuaded that such action was, by the terms of the Act, subject to approval by the IAB before it could be effected. We overrule points of error nine and ten.

In light of our disposition of the above points of error, we need not address Appellants' remaining points.

The judgment of the trial court is affirmed.